**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

| | |
|---|---|
| **FREE BRIDGE AUTO SALES, INC.,** *Plaintiff,* v. **FOCUS, INC.,** *et al.*, *Defendants.* | CASE NO. 3:08-CV-00002 <br><br> <u>**MEMORANDUM OPINION**</u> |

Plaintiff Free Bridge Auto Sales, Inc. ("Plaintiff") alleges a violation of the settlement agreement between itself and Defendant Focus, Inc. ("Defendant") which was reached on March 3, 2009. This matter is before the court upon a motion to enforce the settlement agreement and to award attorney's fees filed by Plaintiff on December 23, 2013 and argued before the Court on January 30, 2014. For the following reasons, I will grant in part and deny in part Plaintiff's motion.

### I. BACKGROUND

On January 3, 2008, Plaintiff filed its initial action in this case. Plaintiff is a used car dealership located in Charlottesville, VA, and owns a trademark in the phrase "Everybody Rides" under both federal and state law. According to Plaintiff, Defendant used the phrase or confusingly similar phrases in three advertisements, most notably Defendant's "Crazy 88" infomercial. Plaintiff alleged in its complaint four counts: Registered Service Mark Infringement in violation of 15 U.S.C. § 1141(1), False Designation of Origin in violation of 15 U.S.C. § 1125(a), Common Law Trademark/Service Mark Infringement and Unfair Competition, and violation of the Virginia False Advertising Statute under Va. Code Ann. §§ 18.2-216 and 59.1-68.3. A number of motions were filed in the case, including a motion to amend the complaint and a motion to compel discovery.

Eventually, on March 3, 2009, Magistrate Judge B. Waugh Crigler reported that the parties had come to a settlement. This court dismissed the case based on that settlement agreement on March 22, 2009. The settlement agreement stated, in pertinent part, that:

1. Defendant forthwith are to cease using any and all marketing materials or infomercials in the Direct Marketing Area ("DMA") of the plaintiff containing the protected words "Everybody Rides" or any confusingly similar words or slogan.

2. Over the next one-year period, and in four month intervals, defendants are to remove all language from their three products containing the words "Everybody Rides," or any confusingly similar language, with the understanding that the defendant's "Crazy 88" infomercial is to be modified within the first 4 months from the date thereof.

The agreement also contained a requirement that Defendant was to supply 35 sales "leads" per month to the Plaintiff.

On March 26, 2010, Plaintiff filed a Motion to Enforce the Settlement Agreement alleging a violation of the provision of the agreement focusing on the leads. That motion was ultimately withdrawn on June 1, 2010. Then on December 23, 2013, Plaintiff filed its second Motion to Enforce the Settlement Agreement, this time alleging a violation of the two provisions of the agreement relating to the inclusion of the "Everybody Rides" phrase within Defendant's advertisements.

Plaintiff alleges that on November 27 or November 28, 2013, Plaintiff became aware that a television advertisement for the "Crazy 88" car financing promotion contained Free Bridge's protected mark, Everybody Rides, and that the ad was running in Free Bridge's DMA of Charlottesville, VA. On December 12, 2013, Plaintiff discovered Focus, Inc.'s YouTube Channel named "Focus Auto Ads," available at www.youtube.com/user/focusads/about. Plaintiff alleges that six ads containing Everybody Rides, including the "Crazy 88" ad and the other two infomercials referenced in the settlement agreement, and one ad containing the confusingly similar phrase "Everybody Drives," were published on the YouTube channel.

Those two incidents form the basis of Plaintiff's present motion, which was filed on December 23, 2013. Defendant filed a brief in opposition to Plaintiff's Motion to Enforce on January 23, 2014. The motions were heard before the Court on January 30, 2014.

## II. STANDARD OF REVIEW

The Fourth Circuit adheres to a strong policy of fostering settlement to "advantage the parties and to conserve scarce judicial resources." *United States ex rel. McDermitt, Inc. v. Centex-Simpson Construction Co.*, 34 F. Supp. 2d 397, 399 (N.D.W.V. 1999) (citing *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir. 1993)). Therefore, "a district court judge possesses 'the inherent authority to enforce a settlement agreement and to enter judgment based on an agreement." *Id.* (quoting *Petty v. The Timken Corp.*, 849 F.2d 130, 132 (4th Cir. 1988)); *see also Hensley v. Alcon Labs, Inc.,* 277 F.3d 535, 540 (4th Cir. 2002) (noting that district courts have inherent authority deriving from their equity power to enforce settlement agreements). A district court retains jurisdiction to enforce an agreement even when the case is otherwise closed. A settlement agreement may be vacated or declared unenforceable by the court, but only where the agreement is "substantially unfair." *Petty*, 849 F.2d at 132-133. Because "a settlement agreement enjoys great favor with the courts, consequently, it is only in the most extraordinary circumstances that such a pact will be vacated." *Mungin v. Calmar Steamship Corp.* 342, F. Supp. 484, 485 (D. Md. 1972). *See also Barham v. Am. Med. Link, Inc.*, 2010 U.S. Dist. LEXIS 118117, at *5-8 (E.D. Va. 2010) (recommending applying these principles to enforce a settlement agreement).

Standard contract principles apply to the interpretation and enforcement of settlement agreements. *Hensley*, 277 F.3d at 540; *Poly USA, Inc. v. Tex Co.*, 2006 U.S. Dist. LEXIS 8383, *6-7 (W.D. Va. 2006). Notably, "when the terms of a contract are clear and unambiguous, a

court is required to construe the terms according to their plan meaning. The guiding light is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." *Golding v. Floyd*, 261 Va. 190, 192 (2001). Furthermore, "[t]he contract is construed as written, without adding terms that were not includes by the parties; . . . the law will not insert by construction, for the benefit of a party, an exception or condition which the parties omitted from their contract by design or neglect." *Commonwealth Group-Winchester Partners, L.P. v. Winchester Warehousing, Inc.*, 2008 U.S. Dist. LEXIS 25690, *14 (W.D. Va. 2008) (quotations omitted).

The award of attorney's fees in this context is governed by the same rules that generally apply to the question of awarding fees. *See Barham v. Am. Med. Link, Inc.,* 2010 U.S. Dist. LEXIS 118117, at *7-8 (E.D. Va. 2010) (applying the American Rule and typical case law to a motion for attorney's fees associated with a motion to enforce a settlement agreement). Generally, "each party bears its own costs unless statutory authority exists for an award of attorneys' fees or an exception to the rule applies." *Huttenstine v. Mast*, 537 F. Supp. 2d 795, 804 (E.D.N.C. 2008) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245-47 (1975)). A district court may grant attorney's fees to a winning party when the losing party has "acted in bad faith, vexatiously, or wantonly." *Alyeska*, 421 U.S. at 258. This remedy is reserved for "extraordinary circumstances" where a defendant's actions "were so egregious" that they warranted an exception to the general rule. *Hensley v. Alcon Labs*, 277 F.3d 535, 543 (4th Cir. 2002) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)).

### III. Discussion

#### A. The Enforceability of the Agreement

The first question before the Court is whether the settlement agreement is enforceable. I note first that district courts have inherent authority deriving from their equity power to enforce settlement agreements. *Hensley v. Alcon Labs, Inc.,* 277 F.3d 535, 540 (4th Cir. 2002). The district court retains jurisdiction to enforce the terms of a settlement agreement even when the case is otherwise closed. The Fourth Circuit adheres to a strong policy of fostering settlement to "advantage the parties and to conserve scarce judicial resources." *United States ex rel. McDermitt, Inc. v. Centex-Simpson Construction Co.*, 34 F. Supp. 2d 397, 399 (N.D.W.V. 1999) (citing *Central Wesleyan College v. W. R. Grace & Co.*, 6 F.3d 177 (4th Cir. 1993)). Therefore, settlement agreements should usually be enforced, and in fact may be vacated or declared unenforceable by the court only where the agreement is "substantially unfair." *Petty v. The Timken Corp.*, 849 F.2d 130, 132 (4th Cir. 1988). Because "a settlement agreement enjoys great favor with the courts, consequently, it is only in the most extraordinary circumstances that such a pact will be vacated." *Mungin v. Calmar Steamship Corp.*, 342 F. Supp. 484, 485 (D. Md. 1972). Based on this standard, I start with the presumption that the agreement is enforceable.

District courts have declined to enforce settlement agreements when a final agreement was not signed by both parties, or when the parties were still negotiating over what terms would be incorporated into the final agreement. *See, e.g., Poly USA, Inc. v. Trex Co.*, 2006 U.S. Dist. LEXIS 8383 (W.D. Va. 2006). Here, though, the settlement agreement reached by Plaintiff and Defendant *is* a valid agreement signed by both parties, and contains the final terms both parties agreed to be bound by. *See* Pl.'s Mem. in Supp. of Pl.'s Mot. to Enforce Ex. A. Furthermore, this valid agreement was the basis of this Court's March 22, 2009 order dismissing the case; both parties had represented that there was no uncertainty or further negotiation necessary between the parties. Thus, I find that there is an enforceable settlement agreement.

Defendant does not contest the enforceability of the agreement generally. Instead, Defendant argues that the settlement agreement was between Plaintiff and an entity called "Focus III." Defendant asserts that "[s]ince September 2010, Focus III has ceased conducting business and has been administratively dissolved as an inactive corporation by the Florida Department of State, Division of Corporations." Def.'s Mem. in Opp'n to Pl.'s Mot. to Enforce 5-6. Defendant further notes that "Focus Direct's acquisition of Focus III's assets was undertaken lawfully under the supervision of and with approval of a Florida court," and that "Focus Direct is an entity separate and distinct from Focus III, and was not organized as a limited liability company until February 8, 2010, almost a year after the Settlement Agreement was signed." *Id.* at 6. Defendant asserts that Virginia follows "the traditional corporate law rules which does not impose the liabilities of the selling predecessor upon the buying successor." *Crawford Harbor Assocs. V. Blake Constr. Co., Inc.*, 661 F. Supp. 880, 773 (E.D. Va. 1987). Thus, Defendant argues that the liabilities and obligations of Focus III should not be imputed to Focus Direct unless expressly set forth in the agreement of the parties. Defendant correctly asserts that the settlement agreement does not specifically refer to the liability of a buying successor, and argues that Focus Direct may not be bound by the terms of the agreement.

However, "Virginia recognizes four traditional exceptions to the general rule that a successor corporation does not assume the liabilities of the predecessor entity." *Blizzard v. National R.R. Passenger Corp.*, 831 F. Supp. 544, 547 (E.D. Va. 1993). One of those exceptions is where "the purchasing corporation is merely a continuation of the selling corporation." *Blizzard*, 831 F. Supp. at 547 (quoting *Harris v. T.I., Inc.,* 243 Va. 63, 70 (1992)). In determining whether one corporation is a "mere continuation" of another under traditional doctrine, the "essential inquiry is whether there has been a continuation of the corporate entity of the seller,

not whether there has been a continuation of the seller's business operations." *Blizzard*, 831 F. Supp. at 548. *See, e.g., Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1458 (11th Cir. 1985); *Crawford Harbor Assocs. V. Blake Constr. Co.*, 661 F. Supp. 880, 885 (E.D. Va. 1987). The "key element" of the inquiry is whether there is "[a] common identity of the officers, directors, and stockholders in the selling and purchasing corporations." *Harris*, 243 Va. at 70; *see also Pepper v. Dixie Splint Coal Co.*, 154 Va. 179, 190 (1935) (finding continuation largely based on identity of ownership and management).

Here, Plaintiff notes that "Raul Vasquez, Focus, Inc.'s founder and party representative who attended the parties' mediation before Judge Crigler and who signed the Settlement Agreement remains . . . employed as Focus, Inc.'s CEO today." Pl.'s Mem. in Supp. of Pl.'s Mot. to Enforce 7. Plaintiff does acknowledge that Robert Anderson, a former officer (and defendant in this action) is no longer associated with Focus, but suggests that that is the only major difference. Plaintiff's Exhibit 1 bears out Plaintiff's claims, with Defendant's website repeatedly referring to the business as "Focus, Inc" rather than "Focus Direct," and also advertising that Focus has developed its expertise "[f]or the past 24 years." Pl.'s Ex. 1, 1. Furthermore, the biographies of the Focus executives all trumpet that their service to the company has been lengthy, with each serving prior to the dissolution of Focus III and the creation of Focus Direct; none of the biographies suggest any break in Focus's business. *Id.* at 2. Defendant does not substantially disagree with Plaintiff's assertions, noting only that "[w]hile Michael Vazquez and [Raul Vazquezs] serve as officers of Focus Direct, Robert Anderson has no involvement with Focus Direct." Def.'s Ex. 1, 3.

After carefully considering the issue, I find that Focus Direct is a mere continuation of Focus III, and that while Defendant is correct that generally a buying successor does not assume

the liabilities of a selling predecessor, here the mere continuation exception applies. Focus appears to have retained the core of its management, with only Robert Anderson no longer involved in the company; the "key element" in finding a mere continuation is thus satisfied. *Harris*, 243 Va. at 70. Additionally, the evidence before the court suggests that there has been a "continuation of the corporate entity of the seller," with Focus Direct continuing to do the same business as Focus III under the same trade name of Focus, Inc. *Blizzard*, 831 F. Supp. at 548. When Defendant's website trumpets its twenty four years in business, it simply strains credibility to suggest anything other than continuation. Although Defendant's counsel argued during oral argument that Focus Direct had purchased Focus III's assets to use without purchasing its liabilities, it seems incredible to suggest that a company may be a long-standing business in its public marketing and a newly formed entity free of obligations in its courtroom posture. Simply put, this is not a situation where one distinct entity purchases another. I find that it would be improper to allow Defendant to escape being bound by the terms of its settlement agreement simply because of a formal change in corporate title. The settlement agreement therefore does apply to Focus Direct, and Defendant is bound to follow the terms of the agreement.

### B. The Terms of the Agreement

Standard contract principles apply to the interpretation and enforcement of settlement agreements. *See, e.g., Hensley v. Alcon Labs*, 277 F.3d 535, 540 (4th Cir. 2002); *Poly USA Inc. v. Tex Co.*, 2006 U.S. Dist. LEXIS 8383, *6-7 (W.D. Va. 2006). Furthermore, "[i]t is firmly established that, when the terms of a contract are clear and unambiguous, a court is required to construe the terms according to their plain meaning." *Golding v. Floyd*, 261 Va. 190, 192 (2001); *see also* Va. Code § 8.01-576.11 (where the parties reach a written settlement disposing of the dispute, the agreement is enforceable in the same manner as any other written contract).

Furthermore, "[t]he contract is construed as written, without adding terms that were not included by the parties . . . the law will not insert by construction, for benefit of a party, an exception or condition which the parties omitted from their contract by design or neglect." *Commonwealth Group-Winchester Partners, L.P. v. Winchester Warehousing, Inc.*, 2008 U.S. Dist. LEXIS 25690, *14 (W.D. Va. 2008). Thus, as Defendant noted during oral argument, the crux of the present motion deals with contract interpretation rather than the underlying trademark issues behind the original suit.

Plaintiff asserts two violations of the settlement agreement in their present motion, with each alleged violation corresponding to one of two terms of the settlement agreement. Therefore I will address each alleged violation in turn.

1. *The November 27-28 Commercial*

According to a declaration filed on behalf of the Plaintiff, the declarant Stephanie Moore "observed [during the morning of November 27 or November 28 2013] a television advertisement for the 'Crazy 88' car financing promotion containing the phrase 'Everybody Rides' in text and audio voiceover" and she "observed this advertisement while physically located in the Charlottesville, Virginia area." Pl.'s Ex. 3, 1. Defendant did not contest that the ad aired during oral argument, in fact admitting that it had. Instead, Defendant explained that "it appears that Comcast offers a package which includes the FOX affiliate station in Washington, DC ---- FOX 5 DC WTTG ---- even though Charlottesville has its own FOX affiliate station," and that while Focus Direct had provided WTTG a version of the "Crazy 88" infomercial that did not contain the phrase "Everybody Rides," "WTTG [must have] mistakenly played an old infomercial." Def.'s Ex. 1, 7-8. According to Defendant, Focus Direct provided WTTG with

another new version of the "Crazy 88" infomercial and requested that WTTG air that new version rather than the one containing the protected phrase. *Id.* at 8-9.

The relevant portion of the settlement agreement states that:

1. Defendant forthwith are to cease using any and all marketing materials or infomercials in the Direct Marketing Area ("DMA") of the plaintiff containing the protected words "Everybody Rides" or any confusingly similar words or slogan.

It is uncontested based on the evidence before this Court that an infomercial did air in the Charlottesville DMA containing the protected words "Everybody Rides." Notably, according to the plain language of this provision of the settlement agreement, there is no time limit after which Defendant may use the phrase in the Charlottesville DMA, nor is there any good faith exception that suggests that only malicious usage of the protected words violates the agreement. Although Defendant argues that "[n]either Focus III nor Focus Direct intended such infomercial to be directed toward the Charlottesville DMA," intent is not the relevant inquiry based on the language present in the settlement agreement. Def.'s Mem. in Opp'n to Pl.'s Mot. to Enforce 3. The agreement does not say that the parties must refrain from directing marketing towards the Charlottesville DMA; it says that they must "cease using any and all marketing materials or infomercials" in the area with the protected words. Clearly an ad that could reach Charlottesville through a cable package would be encompassed in the broad "any and all" language the parties chose. It is therefore evident based on the plain language that the airing of the WTTG ad was a violation of this portion of the settlement agreement.

The parties are advised on the one hand that this provision of the settlement agreement may only be violated by the airing of an ad on television within the "specific and defined regional marketing area." *Id.* at 9. They are also advised, however, that the agreement provision contains no durational limit, and that the district court retains the jurisdiction to enforce any

future violations. *See, e.g., Hensley v. Alcon Labs, Inc.,* 277 F.3d 535, 540 (4th Cir. 2002). Thus, the airing of any ad by Defendant within the Charlottesville DMA with the phrase "Everybody Rides" is a violation of the settlement agreement and must be corrected by Defendant. Defendant represented to the court that "Focus Direct has . . . take[n] proactive steps to ensure that such mistake does not occur again." Def.'s Mem. in Opp'n to Pl.'s Mot. to Enforce 12. If Defendant has sent the correct tape, and neither WTTG nor any other station continues to play an ad in violation of the agreement, Defendant's obligations to correct this violation may have been met. To whatever extent an ad containing the protected words continues to air in the Charlottesville DMA, however, that ad is in violation of the agreement and the motion to enforce is **GRANTED**. Defendant must insure that none of their ads carrying the protected words airs in the Charlottesville DMA.

## 2. The YouTube Channel

According to a declaration filed on behalf of the Plaintiff, the declarant Jennifer Brown "located, viewed and captured [six Focus Auto Ads using the phrase "Everybody Rides" and one using the phrase "Everybody Drives"] on the YouTube Channel named 'Focus Auto Ads.'" Pl.'s Ex. 4, 1. Defendant argues that "the intent behind the settlement focused on the Charlottesville DMA and the three infomercials actively airing in that area at the time," and notes that "[t]he infomercials referenced in Free Bridge's motion were viewable on the internet at the time of the parties' mediation . . . yet the Settlement Agreement *did not* reference these infomercials." Def.'s Mem. in Opp'n to Pl.'s Mot. to Enforce 10. According to Raul Vazquez, "[t]he Internet is not an effective way to advertise to [consumers with bad credit], . . . Focus Direct's YouTube channel is not a core part of its marketing strategy and there have been minimal viewings of the infomercials." Def.'s Ex. 1, 6. Vazquez asserts that "the YouTube channel was simply used as a

repository to store copies of old infomercials," that he "gave no thought to the issue of whether they should be removed from the YouTube channel," and would have been had Plaintiff asked. *Id.* In fact, Defendant noted that upon receiving Plaintiff's motion, Focus Direct removed the infomercials from the YouTube channel. *Id.* at 7.

The relevant portion of the settlement agreement states that:

2. Over the next one-year period, and in four month intervals, defendants are to remove all language from their three products containing the words "Everybody Rides," or any confusingly similar language, with the understanding that the defendant's "Crazy 88" infomercial is to be modified within the first 4 months from the date thereof.

Both parties misconstrue the plain meaning of the agreement by only focusing on a certain portion of the language and ignoring more detrimental phrases. Plaintiff stresses that Defendant was to remove "all language," and argues that "not only [has] Focus, Inc. re-instituted the use of 'Everybody Rides' in the 'Crazy 88' advertisement, but they [have] more than doubled such use from three (3) advertisements, as of the date of the Settlement Agreement, to at least seven (7) advertisements." Pl.'s Mem. in Supp. of Pl.'s Mot. to Enforce 6. Although Plaintiff is correct that Defendant must remove "all language [containing the protected words]" from the subject of this provision, the subject of the provision is very obviously "their three products." Although Plaintiff may've intended to ban Defendant from ever using the language in any product, the plain language of the settlement agreement is clearly more limited. Unfortunately for Plaintiff, "[t]he contract is construed as written, without adding terms that were not included by the parties . . . the law will not insert by construction, for benefit of a party, an exception or condition which the parties omitted from their contract by design or neglect." *Commonwealth Group-Winchester Partners, L.P. v. Winchester Warehousing, Inc.*, 2008 U.S. Dist. LEXIS 25690, *14 (W.D. Va. 2008). The court may not infer a broader scope than what the parties agreed to and drafted. Thus, although Plaintiff has an absolute prohibition on Defendant's use of "Everybody Rides" or

similar phrases in ads which air in the Charlottesville DMA under the first provision of the agreement, this second provision only requires the removal of the language more generally from the three products airing at the time the agreement was drafted.

Although Plaintiff errs by seeking to expand the agreement beyond its plain terms, Defendant's interpretation of the provision is too restrictive. Defendant suggests that the intent behind the agreement focused on "the three infomercials actively airing in that area at the time," and argues that the "Settlement Agreement *did not* reference . . . [the] infomercials [appearing on the YouTube channel] or require Focus III to remove them." Def.'s Mem. in Opp'n to Pl.'s Mot. to Enforce 10. However, the provision in the agreement states that Defendant must remove "all language from their three products containing the [protected] words." The products referred to are clearly the three infomercials, including the "Crazy 88" ad, which Defendant was running at the time Plaintiff filed the initial complaint. But the agreement does not specify that Defendant only has the obligation to remove the language from the products when they are airing in the Charlottesville DMA or on television in particular; this second provision of the agreement notably, and understandably, lacks the geographical restrictions of the first provision. The "three products" referred to must have "all language" containing the words removed, whether the products air on television or on a YouTube channel. Defendant argues that Plaintiff "could have clearly and easily negotiated for such obligation [regarding the YouTube channel] to be included in the Settlement Agreement," but the agreement as drafted clearly lacks any limitation based on format, whatever intent Defendant alleges motivated the drafting. Def.'s Mem. in Opp'n to Pl.'s Mot. to Enforce 11.

Thus, Defendant is incorrect that there was no violation of the settlement agreement from the airing of the ads on the YouTube channel. The airing of the "three products" on the YouTube

channel was a violation of the second provision of the agreement. Plaintiff is incorrect, though, that this provision affords protection to anything but instances where those "three products" continue to carry the protected words. It is clear that Defendant did not negotiate a geographic or format restriction to the second provision, and equally clear that Plaintiff did not negotiate a broader protection which would prevent Defendant from using the language in *any* product. Thus, the ads on the YouTube channel were a violation insofar as they were uploaded versions of the three products referred to in the agreement; the other ads on the channel were not in violation of the agreement.

It is clear based on the language of the agreement that maintaining those three products with the "Everybody Rides" language on the YouTube channel *was* a violation of the agreement, The parties are advised that any usage whatsoever of the three infomercials highlighted by the agreement, but only those three, is a violation of the second provision of the agreement when they continue to use the protected words. Defendant represents that "Focus Direct removed these infomercials [from the YouTube channel] upon receiving Free Bridge Auto's motion," and stated that "[i]f Focus III was obligated under the Settlement agreement to affirmatively remove these infomercials from its YouTube channel, the failure to do so was an innocent oversight." Def.'s Ex. 1, 7. If Defendant has already removed those three ads from the YouTube channel, the YouTube channel is no longer in violation of the agreement. However, to whatever extent those three products, containing the protected words, still exist in any format, the motion to enforce is **GRANTED**. Defendant must insure that no copy of those three products still carries the protected words.

### C. Attorney's Fees

Both parties referenced the language and citations contained in my recent *Okie Int'l Co. v. Old Dominion Footwear, Inc.*, 2014 U.S. Dist. LEXIS 5499 (W.D. Va. 2014) opinion to provide the basis for determining whether to award attorney's fees. In short, the American Rule is generally followed, and "each party bears its own costs unless statutory authority exists fro an award of attorneys' fees or an exception to the rule applies." *Huttenstine v. Mast*, 537 F. Supp. 2d 795, 804 (E.D.N.C. 2008) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245-47 (1975)). A district court may also grant attorney's fees to a winning party when the losing party has "acted in bad faith, vexatiously, or wantonly." *Alyeska*, 421 U.S. at 258. Importantly, this remedy is reserved for "extraordinary circumstances" where a defendant's actions "were so egregious" that they warranted an exception to the general rule. *Hensley v. Alcon Labs*, 277 F.3d 535, 543 (4th Cir. 2002) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)); *see also Barham v. Am. Med. Link, Inc.*, 2010 U.S. Dist. LEXIS 118117, at *7-8 (E.D. Va. 2010) (recommending a denial of attorney's fees in the context of a motion to enforce a settlement agreement where malfeasance was alleged generally but specific egregious conduct was not alleged specifically).

The basis for Plaintiff's request for fees is an allegation that Defendant has behaved "in bad faith, vexatiously, or wantonly." *Alyeska*, 421 U.S. at 258. In terms of the present motion, Plaintiff's argument is largely based on the fact that there have been the two violations of the agreement discussed above and that Defendant has if anything been increasing production of ads with the "Everybody Rides" phrase on their YouTube channel. Pl.'s Mem. in Supp. of Pl.'s Mot. to Enforce 6. During oral argument, Plaintiff also cited to an earlier motion to enforce which Plaintiff dismissed when Defendant claimed bankruptcy; Plaintiff suggests that the ongoing nature of Defendant's business suggests a history of opportunism and efforts to skirt its

obligations towards Plaintiff and the court. Defendant responds that "Free Bridge has failed to offer any evidence of the kind required to turn a simpl[e] breach of contract into justification for the recovery of its legal fees, and quotes the *Okie* opinion where I stated that "[f]ailing to comply with terms of a settlement agreement, without more, does not present the type of 'extraordinary circumstances' necessary for an award of attorney's fees." Def.'s Mem. in Opp'n to Pl.'s Mot. to Enforce 13.

Simply put, where both parties misunderstood the language of the agreement at times, and where Defendant has evidently made a good faith effort to correct oversights, I cannot find "extraordinary circumstances . . . so egregious" that they warrant an exception to the general rule. *Hensley v. Alcon Labs*, 277 F.3d 535, 543 (4th Cir. 2002) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)). Plaintiff had the burden of demonstrating that Defendant's behavior was egregious enough to satisfy a departure, and Plaintiff has failed to meet that burden. Although Defendant's apparent good faith efforts to correct the violations Plaintiff raises in the instant motion do not relieve them of any obligations under the terms of the agreement, as they are in fact obligated and therefore *must* take whatever corrective action is necessary to comply, they do nevertheless help demonstrate that an award of fees would be inappropriate. As Plaintiff did not effectively rebut Defendant's characterization of the two violations at issue in the instant motion as inadvertent, an award of fees would therefore be improper. Plaintiff's request for an award of fees is therefore **DENIED**.

### IV. Conclusion

Plaintiff correctly highlighted two violations of the agreement, and the agreement is enforceable against Defendant to the extent and in the ways discussed in the opinion. But Plaintiff failed to provide evidence to rebut Defendant's characterization of the two violations as

inadvertent, so there are not the kind of extraordinary circumstances present in this case needed to justify a very unusual award of fees. Thus, Plaintiff's motion to enforce will be granted in part and denied in part. An appropriate order follows.

Entered this  4th  day of February, 2014.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE